Paula YORK and Brian York, Appellants,

v.

**SEVIER COUNTY AMBULANCE AUTHORITY, et al., and Blue Cross and Blue Shield of Tennessee, Appellee.**

Supreme Court of Tennessee, at Knoxville.

Nov. 22, 1999.

Richard T. Wallace, Wallace & Jones, Sevierville, Stephen J. Cox, Reischling & Ault Knoxville, for Appellants.

Daniel M. Gass, O'Neil, Parker & Williamson, Knoxville, for Appellee, Blue Cross and Blue Shield of Tennessee.

Jimmy W. Bilbo, Logan, Thompson, Miller, Bilbo, Thompson & Fisher, P.C., Cleveland, for Amicus Curiae, Tennessee Trial Lawyers Association.

## OPINION

ANDERSON, Chief Justice.

We granted this appeal to decide whether an insured must receive full compensation for losses, i.e., be "made whole," before an insurer may receive reimbursement for medical expenses paid on behalf of the insured.

The trial court found that the insurer, Blue Cross and Blue Shield of Tennessee ("Blue Cross/Blue Shield"), was not entitled to subrogation rights or reimbursement for medical expenses under its insurance contract because the insured, Brian York, had not received full compensation for his losses under a settlement agreement. The Court of Appeals reversed the trial court's judgment, concluding that Blue Cross/Blue Shield was entitled to reimbursement for medical expenses pursuant to a "right of reimbursement" clause in the policy, regardless of whether York had been "made whole" or whether a right of subrogation existed.

In *Wimberly v. American Casualty Co.*, 584 S.W.2d 200 (Tenn.1979), we held that an insurer was not entitled to subrogation rights before an insured is made whole for his or her losses. We now likewise conclude that an insurer may not receive reimbursement for medical expenses made on behalf of the insured when the insured has not been made whole for his or her losses, even where a "right of reimbursement" provision is contained in the insurance policy. A contrary holding would allow an insurer to circumvent the "made whole" doctrine simply by using a reimbursement provision in lieu of subrogation. We therefore reverse the judg-

ment of the Court of Appeals and reinstate the judgment of the trial court.

## BACKGROUND

On November 4, 1994, the plaintiffs, Paula York and her nine-year-old son, Brian, were injured when their vehicle was struck from behind by a Sevier County ambulance. The plaintiffs filed a suit against the driver of the ambulance, Sevier County Ambulance Authority, and Sevier County. Each plaintiff subsequently received an agreed judgment in the amount of $130,000.[1]

Brian York was covered by an insurance policy with Blue Cross/Blue Shield. Blue Cross/Blue Shield was impleaded into the lawsuit to determine whether it had a right to subrogation or reimbursement for medical expenses totaling $19,149.97 that it had paid on Brian York's behalf. The insurance contract between Brian York and Blue Cross/Blue Shield contained the following two provisions, among others:

1. We assume your legal rights to the recovery of any payments for medical expenses paid by us where your injury or illness resulted from the action or fault of another person. Blue Cross and Blue Shield of Tennessee has the right to recover amounts equal to our payment by suit, settlement or otherwise from the injured party's own insurance *or from the person who caused the illness or injury, from his insurance company, or any other source, such as uninsured motorist coverage.*

. . .

3. *In addition, you agree to reimburse us up to the amount we have provided from any money you (or a member of your family) recover from any source.* You will be responsible for reimbursing us the amount of money recovered through judgment or settlement from your own insurance or from the third party (or his insurance), up to the amount of benefits provided by us. *This right to reimbursement comes first, even if you have not been paid for all of your claim for damages* against the third party or if the payment(s) you receive are for (or are described as for) other damages, such as personal injuries or other health care expenses or if the member recovering the money is a minor.

(Emphasis added).

The trial court found that Blue Cross/Blue Shield was not entitled to receive subrogation or reimbursement, despite the language in the policy, because York had not been made whole under the settlement.[2] Moreover, the trial court concluded that the right to be made whole was an equitable doctrine that could not be contracted away by the insured.

The Court of Appeals, however, concluded that the reimbursement provision was to be enforced as written in the policy, regardless of whether York had been made whole or whether there was a subrogation clause also contained in the policy. It therefore reversed the judgment of the trial court.

We granted the Yorks' application for permission to appeal.

## ANALYSIS

We will begin by contrasting subrogation and reimbursement. Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Castleman Constr. Co. v. Pennington*, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968) (citation omitted). In the context of insurance, subrogation allows the insurer to "stand in the

---

1. The judgment reflected the maximum amount recoverable under the Governmental Tort Liability Act. Tenn.Code Ann. §§ 29–20–403, 404 (Supp.1999).

2. The trial court specifically found that Brian York's damages from the injuries sustained in the accident exceeded the $130,000 settlement and judgment.

shoes" of the insured and assert the rights the insured had *against a third party*. E.g., *Wimberly*, 584 S.W.2d at 203. In contrast, a right of reimbursement simply allows the insurer to recoup payments *from the insured* which had been made on the insured's behalf. *See Barreca v. Cobb*, 668 So.2d 1129, 1131 (La.1996) (contrasting subrogation and reimbursement).[3]

■ The principles of subrogation, whether provided for by contract ("conventional" subrogation), or arising under equitable principles of law ("legal" subrogation), are well-established in our case law.[4] Subrogation is based on two fundamental premises: 1) that an insured should not be allowed double recovery for the same loss, which would be the result if permitted to recover both from the insurer and a tortfeasor; and 2) that the tortfeasor or wrongdoer should compensate the insurer for payments the insurer made to the insured. *Wimberly*, 584 S.W.2d at 203; *see* 16 *Couch on Insurance Law* 2d, § 61:18.

These principles have been analyzed in considering whether an insured must be "made whole," that is, receive full compensation for his or her losses, before the insurer is entitled to subrogation rights. In *Wimberly*, the insured's restaurant sustained damages of $44,619 due to a fire that started when the tortfeasor drove a vehicle into the restaurant. The tortfeasor's insurance carrier paid the policy limits of $25,000, and the insured's two insurance companies paid a total of $15,000 under its fire insurance policies. The insurance companies, enforcing subrogation rights under its policies, received pro rata shares from the $25,000 settlement received by the insured. The insured then filed suit to recover these shares. *Wimberly*, 584 S.W.2d at 201–02.

In applying equitable subrogation principles, we observed in *Wimberly* that the insured had not been "made whole," and therefore could not have received double recovery, because the recovery of $40,000 did not cover the total losses of $44,619. Secondly, we noted that the tortfeasor did not "reap a windfall" because she was released by the parties in consideration of the $25,000 payment in settling the claim. Moreover, in considering the equities between the parties, we concluded that the loss incurred by the insurance companies was a risk they had been paid to assume. We therefore held that the insured must be made whole, i.e., receive full compensation for his or her damages, before subrogation rights arise in favor of insurers. *Id.* at 203.

In arriving at this conclusion, we rejected the argument that the "made whole" doctrine was inapplicable simply because subrogation had been provided for in the insurance policy, stating that the " 'right of subrogation rests not upon a contract, but upon the principles of natural justice.' " *Id.* at 203 (quoting *Castleman*, 432 S.W.2d at 675). As the Supreme Court of Alabama has commented in reaching the same result:

> Our review of the origins and development of the law of subrogation persuades us that a prerequisite to the right of subrogation is the full compensation of the insured. *In effect, an attempt to contract away this prerequisite to the right of subrogation would defeat the right itself.* This is not compatible with the principle of fairness that underlies all equitable doctrines. Therefore, we hold that the insurer has no right to subrogation unless and until the insured is made whole for his loss.

*Powell v. Blue Cross & Blue Shield*, 581 So.2d 772, 777 (Ala.1990) (emphasis add-

---

**3.** In their most basic forms, therefore, subrogation means that party A is substituted for party B and is allowed to raise the rights party B had against party C. Reimbursement simply allows party A to recover from party B payments it made on behalf of party B.

**4.** Although not applicable here, a right of subrogation may also be statutory. *Castleman v. Ross Eng'g, Inc.*, 958 S.W.2d 720 (Tenn.1997).

ed); *see also Hare v. State*, 733 So.2d 277, 284 (Miss.1999) (stating that "this Court adopts the made whole rule and holds that it is not to be overridden by contract language, because the intent of subrogation is to prevent a double recovery by the insured").

Our decision in *Wimberly* is consistent with the rule followed in numerous other jurisdictions.[5] The question, then, in the case before us is whether our conclusion in *Wimberly* regarding subrogation applies where an insurance policy has a specific right of reimbursement. In our view, a right of reimbursement raises many of the same equitable issues involved in subrogation and warrants the same conclusion—that the insured must be made whole before the insured is entitled to reimbursement.

Initially, we observe that neither subrogation nor reimbursement should detract from the primary goal of compensatory damages: to compensate a party for the full extent of his or her losses. Moreover, the equitable interests outlined in *Wimberly* apply equally to reimbursement. For instance, as with subrogation, there is no risk of the insured receiving a "double recovery" for the same loss if he or she has not been made whole. Similarly, reimbursement to the insurer from the insured would not hold the wrongdoer or tortfeasor accountable for the loss. Finally, in considering the equities between the parties, we note that any potential loss incurred by the insured is a loss that it was paid to assume by the very nature of an insurance contract. *Wimberly*, 584 S.W.2d at 203; *see also Powell*, 581 So.2d at 777 ("Where either the insurer or insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.");

*Continental W. Ins. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708, 713 (1997) ("loss should be borne by the insurer for that is a risk the insured has paid it to assume").

Other jurisdictions have reached the same conclusion. The Nebraska Supreme Court, in *Swartzendruber*, addressed an insurance contract that contained a conventional subrogation provision and a reimbursement provision. The Court reasoned that the reimbursement clause "encompassed within the concept of subrogation" inasmuch as reimbursement, like subrogation, reflects the underlying equitable principle that an insured should not recover twice for the same loss. *Id.* at 712. The Court therefore applied its traditional subrogation analysis in concluding that neither subrogation nor reimbursement is available to the insurer unless and until the insured has been fully compensated, i.e., "made whole" for his or her loss:

> Because [the insured] has not received a double payment for her property damage losses, we conclude that the basic principles of subrogation mandate that [the insurer] may not invoke the reimbursement provision of its policy to force [the insured] to repay the moneys she received from [the insurer] for property damage....

*Id.* at 713; *see also Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74, 82 (1993).

Similarly, the Alabama Supreme Court has rejected the argument that a reimbursement provision contained in an insurance contract entitled an insurer to recover its payments for medical expenses after concluding that such a provision "would

5. *Powell*, 581 So.2d at 773; *Continental Western Ins. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997); *St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co.*, 19 N.C.App. 302, 198 S.E.2d 482 (1973); *Lombardi v. Merchants Mut. Ins. Co.*, 429 A.2d 1290 (R.I. 1981); *Ortiz v. Great So. Fire & Cas. Ins. Co.*, 597 S.W.2d 342 (Tex.1980); *Thiringer v. American Motors Ins. Co.*, 91 Wash.2d 215, 588 P.2d 191 (1978); *Sorge v. National Car Rental Sys., Inc.*, 182 Wis.2d 52, 512 N.W.2d 505 (1994); *see also 16 Couch on Insurance Law* 2d, § 61.43.

abrogate the[ ] underlying principles of subrogation by reimbursing the insurer even though the insured has not fully recovered for her loss." *Powell,* 581 So.2d at 775. The Supreme Court of Wisconsin has also observed that "subrogated insurers *are not entitled to reimbursement* from their insured when the insured has recovered the full amount of her insurers' payments but has not recovered all of the damages to which she is entitled." *Sorge v. National Car Rental Sys., Inc.,* 182 Wis.2d 52, 512 N.W.2d 505, 507 (1994) (emphasis added).

 In the present case, the main argument advanced by Blue Cross/Blue Shield is that the "right of reimbursement" was contained in the contract, and the Court should uphold the right of the parties to contract freely on the terms of a contract. It further contends that the plaintiffs had the right to purchase a policy from another insurance carrier if it preferred terms that did not include a right of reimbursement.

The fallacy in this contention is that it presumes the plaintiffs had the bargaining power, leverage, or business acumen to negotiate the terms of this or any other standardized insurance contract. Moreover, it also presumes that the insured parties knew or should reasonably have known of the "made whole" doctrine or this Court's prior holdings that subrogation is subject to an insured's being made whole.[6] The reality is that the vast majority of insurance policies stem from a group or network plan, in which the individual policy holder had no negotiating input and merely pays the premiums and accepts the terms. The Mississippi Supreme Court, for instance, has observed, "to allow the literal language of an insurance contract to destroy an insured's equitable right to subrogation ignores the fact that this type of contract is realistically a unilateral con-

tract of insurance and overlooks the insured's total lack of bargaining power in negotiating the terms of these types of agreements." *Hare,* 733 So.2d at 284.

 In summary, our case law is clear that an insurer is not entitled to subrogation unless and until the insured has been made whole for his or her losses, regardless of what language is contained in the contract. In our view, the same rule must apply to a contract that, in effect, seeks to evade the "made whole" doctrine by replacing or supplementing the law of subrogation with a right of reimbursement. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

## *CONCLUSION*

We conclude that an insured party must receive full compensation and be made whole for his or her losses before an insurer is entitled to reimbursement for medical expenses paid on behalf of the insured, even when there is a specific "right of reimbursement" clause in the insurance policy. We therefore reverse the Court of Appeals' judgment and reinstate the trial court's judgment.

Costs of appeal are taxed to the appellee, for which execution shall issue if necessary.

DROWOTA, BIRCH, HOLDER and BARKER, JJ., concur.

---

**6.** Obviously, nothing in the contract reveals that the plaintiffs would otherwise have a right to be made whole for their damages. Moreover, despite our decision in *Wimberly,* the contract used by Blue Cross/Blue Shield contains a subrogation provision without indicating that the subrogation right only arises upon the insured being made whole. Thus, nothing in the contract provides notice that the insured is entitled under the law to be made whole.