IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 3, 2006 Session

## SHELBY ABBOTT, ET AL. v. BLOUNT COUNTY, TENNESSEE, ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Blount County**
**No. L-13422     W. Dale Young, Judge**

---

**No. E2004-00637-SC-R11-CV - Filed on November 7, 2006**

---

This Court granted permission to appeal in this case pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure to determine whether summary judgment was appropriately granted by the trial court. Upon review, we affirm the holding of the Court of Appeals that genuine issues of material fact exist regarding whether the plaintiffs were made whole by the amounts paid by Blount County and the tortfeasors. As part of this determination, we find that issues of material fact also exist regarding whether Blount County has a right to reimbursement. Additionally, we affirm the holding of the Court of Appeals that genuine issues of material fact exist regarding whether Blount County waived its claim to subrogation. Accordingly, we affirm the judgment of the Court of Appeals that summary judgment was inappropriate and remand the case to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed;**
**Case Remanded to the Trial Court**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

Joe Costner, Maryville, Tennessee, for the Appellants, Shelby Abbott and Charles Abbott.

Norman H. Newton and LaJuana G. Atkins, Maryville, Tennessee, for the Appellee, Blount County.

### OPINION

#### I. Factual and Procedural History

Mrs. Shelby Abbott was a fifty-three-year-old assistant librarian at a Blount County middle school when she was injured in an automobile accident on January 10, 2001. Initially, a vehicle driven by Ms. Sheila Majors struck the rear of Abbott's vehicle. The Abbott vehicle was then struck

from the rear by a vehicle driven by either Mr. Willard Goard or Mrs. Bonnie Goard. The parties agree that Abbott suffered severe injuries as a result of this accident.

Abbott filed suit against Majors and the Goards for the injuries she sustained, and her husband, Charles Abbott, sought damages for loss of consortium. As of the date of the settlement hearing, Abbott had incurred medical expenses of approximately $220,000, of which amount her insurance carrier, the Blount County Employee Benefit Plan ("Blount County"), had paid $180,184. The Abbotts settled their claims against the Goards for $1,175,000, their claims against Majors for $25,000, and their claims against their uninsured motorist carrier for $75,000.

The Abbotts then instituted this lawsuit by filing a "Petition for Declaratory Judgment" on August 27, 2002, naming as defendants Blount County and American United Life Insurance Company.[1] In their complaint, the Abbotts sought declarations that they had not been made whole by their settlement with the tortfeasors and that Blount County had no right of reimbursement regarding their recovery from the tortfeasors. Blount County then filed an Answer and Counterclaim, seeking reimbursement from Abbott in the amount of $180,184, the full amount of medical expenses it had paid. The Blount County employee insurance plan specifies that, where a third party may be legally responsible for an injury to a person insured under the plan, the plan is "subrogated to the covered person's rights against such third party" and "has the right of first reimbursement from any recovery received by the covered person."

The Abbotts filed a motion for summary judgment seeking a determination that Blount County had no right of subrogation or reimbursement for the medical expenses paid on behalf of Abbott because the Abbotts had not been fully compensated, or, in other words, made whole. The undisputed facts submitted indicate that Abbott was "seriously injured," incurred medical expenses of $220,000, and suffered from amnesia to the extent that she has no recollection of any details of her life prior to the collision. Additionally, she is now relearning to read and write, and she currently walks with a cane. There is, however, no stipulation or evidence in the record concerning the actual monetary value of these damages. Nonetheless, the trial court granted the summary judgment motion, concluding that "there is no amount of money that would have made Ms. Abbott whole."

The Court of Appeals reversed the trial court's award of summary judgment and remanded the case for further proceedings. The Court of Appeals concluded that genuine issues of material fact exist regarding whether the Abbotts were made whole by the total amounts paid by Blount County and the tortfeasors. The Court of Appeals also concluded that genuine issues of material fact exist regarding whether Blount County had notice of the Abbotts' cause of action against the third-party tortfeasors and, if so, whether it waived its claim to subrogation.

---

[1] American United Life Insurance Company had issued a stop-loss insurance policy to Blount County under which Blount County was to be reimbursed for claims paid by the Plan that exceeded the stop-loss limit ($125,000). American United Life Insurance Company was subsequently dismissed from the case as a non-essential party by agreement of the Abbotts and Blount County.

II. Analysis

A. The Made-Whole Doctrine

Before examining whether the trial court erred by determining that no genuine issues of material fact exist, we address Blount County's argument that the made-whole doctrine is inapplicable to this case because the Abbotts did not obtain Blount County's consent to the settlement. To address this issue properly, it is helpful to review briefly the development of the made-whole doctrine in this state. Our modern made-whole doctrine jurisprudence began with our decision in Wimberly v. Am. Cas. Co., 584 S.W.2d 200 (Tenn. 1979). In that case, we concluded that subrogation is a doctrine that is generally governed by equitable principles rather than terms of the contract giving rise to the subrogation claim. Id. at 203. We noted that the primary purpose of subrogation is "to prevent either the unjust enrichment of the insured through a double recovery or a windfall benefit to the principal tortfeasor." Id. Because there is no threat of double recovery if the insured has not been made whole, we held that the insurer has no right to recover until the insured is made whole. Id. at 203-04.

Our next case addressing the made-whole doctrine, and the case upon which Blount County relies, is Eastwood v. Glens Falls Ins. Co., 646 S.W.2d 156 (Tenn. 1983). Eastwood involves an agreement between an insurer and an insured that no settlement would be reached with a tortfeasor without the consent of the insurer. In contrast to our decision in Wimberly, in Eastwood we did not discuss the equitable nature of subrogation. We relied instead on the contractual provisions of the subrogation agreement. See id. at 157-58. We held that, if such a consent agreement is present and if the insurance proceeds and settlement proceeds do not make the insured whole, then the insured could not settle the claim without the consent of the insurer. Id. We also noted that Wimberly stands only for the proposition that, an insurer is not entitled to subrogation when an insurer and an insured agree to a settlement that when combined with insurance proceeds received by the insured, fails to make the insured whole. Id. at 158.

Since Eastwood, we have decided two additional cases regarding the made-whole doctrine: York v. Sevier County Ambulance Auth., 8 S.W.3d 616 (Tenn. 1999) and Health Cost Controls, Inc. v. Gifford, 108 S.W.3d 227 (Tenn. 2003). In York, we applied the made-whole doctrine to an insurer's right of reimbursement. 8 S.W.3d at 621. In Health Cost Controls, we affirmed York and again held that an insurer is not entitled to reimbursement until an insured is made whole. 108 S.W.3d at 231. In both cases, we returned to the equitable principles supporting our holding in Wimberly. See York, 8 S.W.3d at 619-20; Health Cost Controls, 108 S.W.3d at 230-31. We explicitly stated that these equitable provisions would control "regardless of what language is contained in the contract." York, 8 S.W.3d at 621; see also Health Cost Controls, 108 S.W.3d at 229 (explaining that York held that "an insured must be made whole before an insurer is entitled to reimbursement *regardless of policy language*" (emphasis added)). We stressed the importance of the made-whole doctrine by noting that "a prerequisite to the right of subrogation is the full compensation of the insured. *In effect, an attempt to contract away this prerequisite . . . would defeat the right itself.*" York, 8 S.W.3d at 619.

-3-

The above review of the development of the made-whole doctrine makes clear that Eastwood has been abrogated by subsequent opinions of this Court.  In Eastwood, we failed to consider the equitable principles governing subrogation and narrowly construed our holding in Wimberly.  Our holdings in York and Health Cost Controls have implicitly overruled Eastwood.  Those later cases make clear that the made-whole doctrine applies regardless of the language found in the insurance contract.  Contract terms that require the consent of the insurer would allow the insurer to withhold consent from any settlement that does not make the insured whole and thereby compel the insured to seek a larger award at trial.  We disapproved of allowing insurers to contract away the right to be made whole in York, and we do so again today.  Finally, we note that the lack of an insurer's consent does not make an insured more likely to receive a double recovery.

## B. Summary Judgment

We now turn to the issue of whether the trial court erred in finding that there are no genuine issues of material fact in this case.  The standard of review for a trial court's grant of summary judgment is de novo, according no presumption of correctness to the trial court's determination.  Godfrey v. Ruiz, 90 S.W.3d 692, 695 (Tenn. 2002).  Summary judgment is appropriate only when the moving party has shown that there is no genuine issue of material fact and that the party is entitled to summary judgment as a matter of law.  Id.  In addition, "[w]hen considering a summary judgment motion, courts must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor."  Id.  The trial court's grant of summary judgment for the Abbotts should be upheld unless there are genuine issues of material fact regarding whether the Abbotts were made whole or if there are genuine issues of material fact regarding whether Blount County waived its subrogation rights.

Whether an insured has been made whole is a matter of fact, upon which the insured has the burden of proof.  See Health Cost Controls, 108 S.W.3d at 231.  The record before this Court is insufficient to determine whether the Abbotts were made whole.  The record includes evidence of Abbott's medical bills but is silent as to the total monetary amount of her losses.  There are, therefore, genuine issues of material fact regarding whether the Abbotts were made whole by the payments made by Blount County and by their settlement with the tortfeasors.

There are also genuine issues of material fact with regard to the issue of waiver.  Prior to its payment of the Abbotts' claims, Blount County required that Abbott complete and return an agreement in which she promised to provide the employee insurance plan with information necessary to protect the rights of the plan and to reimburse the plan for any payments she received from a third party.  Blount County asserts that this agreement entitled it to notice of the Abbotts' lawsuits, and, because no notice was given, the Abbotts are estopped from raising the made-whole doctrine.  The Abbotts respond that Blount County had notice of the accident and lawsuits and should have acted to protect its interest.  They assert that Blount County has waived its subrogation rights by failing to join in the underlying action.  We note our previous holdings that regardless of contractual language, an insured has a right to be fully compensated before subrogation or reimbursement is

allowed. Thus, the Abbotts are not estopped from raising the made-whole doctrine. It is possible that Blount County has waived its right to subrogation and reimbursement.

In Gaston v. Tenn. Farmers Mut. Ins. Co., 120 S.W.3d 815, 819 (Tenn. 2003), the Court stated that it is "'the long-standing rule in Tennessee that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent.'" (quoting Bill Brown Constr. Co. v. Glens Falls Ins. Co., 818 S.W.2d 1, 13 (Tenn. 1991)). Under this principle, an insurer "may not fail to act and then seek to enforce exclusionary terms of a policy." Id. at 820. It follows that if Blount County had knowledge of the Abbotts' lawsuit and settlement negotiations but did not intervene or warn the insured that Blount County's subrogation rights could affect the Abbotts' recovery, then Blount County will be deemed to have waived those rights. However, the facts concerning whether Blount County had notice of the lawsuit and settlement negotiations are disputed, and, thus, we affirm the Court of Appeals' holding that summary judgment as to this issue is inappropriate.

III. Conclusion

We conclude that there are genuine issues of material fact regarding whether the Abbotts were made whole and whether Blount County waived its reimbursement rights. Because these issues are determinative of whether Blount County is entitled to reimbursement, we affirm the Court of Appeals' reversal of the trial court's grant of summary judgment and remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the parties and their sureties equally, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE