IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 14, 2005 Session

## SHELBY ABBOTT, ET AL. v. BLOUNT COUNTY, TENNESSEE, ET AL.

**Direct Appeal from the Circuit Court for Blount County**
**No. L-13422      W. Dale Young, Judge**

_____

**No. E2004-00637-COA-R3-CV  - FILED AUGUST 9, 2005**

Plaintiffs filed a declaratory judgment action seeking a declaration that they had not been "made whole" in a settlement agreement with third-party tortfeasors and that any subrogation claim by Defendant insurer should be denied. The trial court awarded Plaintiffs summary judgment. Defendant insurer appeals. We reverse the award of summary judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Norman H. Newton and LaJuana G. Atkins, Maryville, Tennessee, for the appellant, Blount County, Tennessee.

Joe Costner, Maryville, Tennessee, for the appellees, Shelby Abbott and husband, Charles Abbott.

### OPINION

This dispute arises from a January 2001 automobile accident in which Plaintiff Shelby Abbott (Ms. Abbott) was struck by two vehicles. At the time of the accident, Ms. Abbott was 56 years of age and had been employed by the Blount County School System for approximately ten years. She currently was employed as a middle school assistant librarian. As a Blount County employee, Ms. Abbott was enrolled in the Blount County Employee Benefit Plan.

Ms. Abbott sustained horrific and permanent injuries in the January accident. She was hospitalized for 64 days, spent 20 days on ventilator, and underwent numerous surgical procedures. Ms. Abbott incurred medical expenses in the amount of $223,000. Additionally, as a result of head trauma and extended loss of consciousness, she suffered hypoxia that caused permanent brain damage, amnesia, and memory deficits. She had virtually no recollection of her life before the accident and had to relearn how to read, write, and perform other daily tasks. Ms. Abbott lost her

sense of taste and smell and her ability to discern hot from cold. She also suffered vision and hearing loss. Ms. Abbott, who taught karate, jogged, and bicycled prior to the accident, is not expected to be able to return to gainful employment.

Ms. Abbott's husband, Charles Abbott (Mr. Abbott) had been a school bus driver for ten years prior to the accident. He was changing jobs in 2001 and had begun training for a position with a security company. After the accident, Mr. Abbott decided not to pursue the security position in order to care for Ms. Abbott.

Mr. Abbott and Ms. Abbott (collectively "the Abbotts") brought separate personal injury and loss of consortium actions against the drivers of the two vehicles that struck the vehicle driven by Ms. Abbott. In May 2002, the Abbotts reached an out-of-court settlement in the consolidated actions against the two defendant drivers. The total amount of the settlement was $1,275,000, which was approximately $75,000 to $100,000 less than the total amount of insurance coverage available.[1]

Defendants Blount County and the Blount County Employee Benefit Plan (collectively, "Blount County") and American United Life Insurance Company paid medical benefits in the amount of $180,184. In August 2002, the Abbotts filed a petition in the Circuit Court of Blount County seeking a declaratory judgment against Blount County and American United Life Insurance Company that Ms. Abbott was not "made whole" by the settlement and that, accordingly, any claim for subrogation should be denied. The parties stipulated that American United Life Insurance Company was not an indispensable party, had no right to assert subrogation against the Abbotts, and accordingly should be dismissed.

In October 2003, the Abbotts moved for summary judgment, asserting that Ms. Abbott was not "made whole" by the May 2002 settlement and that, as a matter of law, Blount County could not, therefore, assert a right to subrogation. The trial court heard the matter on January 5, 2004, and granted the Abbotts' motion for summary judgment on February 2, 2004. Blount County filed a timely notice of appeal to this Court. We reverse the award of summary judgment and remand for further proceedings.

### *Issues Presented*

Blount County presents the following issues, as we restate them, for our review:

(1)     Whether the trial court erred in awarding summary judgment to the Abbotts under the made whole doctrine because the Abbotts waived the doctrine by entering into a settlement agreement with the defendants in the underlying tort action without the agreement, consent, or participation of Blount County.

---

[1]In their briefs to this Court, the Abbotts contend the settlement was within $75,000 of the available insurance proceeds. Blount County contends an additional $100,000 was available. There is no proof in the record to affirmatively support either amount. However, the exact amount is immaterial to our holding here.

(2)      If the made whole doctrine applies under the facts of this case, whether the trial court erred in awarding summary judgment to the Abbotts under the made whole doctrine where a genuine issue of material fact exists regarding whether Ms. Abbott was made whole.

### Standard of Review

Summary judgment should be awarded when the moving party can demonstrate that there are no genuine issues regarding material facts and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). Mere assertions that the non-moving party has no evidence does not suffice to entitle the moving party to summary judgment. *McCarley*, 960 S.W.2d at 588. The moving party must either conclusively demonstrate an affirmative defense or affirmatively negate an element which is essential to the non-moving party's claim. *Id.* If the moving party can demonstrate that the non-moving party will not be able to carry its burden of proof at trial on an essential element, summary judgment is appropriate. *Id.*

This Court reviews an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). In determining whether to award summary judgment, we must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts. *Id.* If there is any doubt about whether a genuine issue of material fact exists, summary judgment should not be awarded. *McCarley*, 960 S.W.2d at 588.

### Applicability of the Made Whole Doctrine

In its order awarding summary judgment to the Abbotts, the trial court stated, "[f]airness and justice dictate in the court's view that the 'made whole doctrine' be applied in this particular case." We are not unappreciative of the trial court's sentiments in this regard, because Ms. Abbott certainly has suffered tremendous injury in addition to documented medical expenses in the amount of $223,000. However, although the made whole doctrine rests on principles of equity and fairness, these principles protect the interests of both the insured and insurer, seeking to balance the equities between the two. *See York v. Sevier County Ambulance Authority*, 8 S.W.3d 616, 619 (Tenn. 1999). Thus, our analysis of whether summary judgment is appropriate must begin with whether Ms. Abbott may assert the made whole doctrine under the facts of this case.

Blount County contends that the Abbotts waived their right to assert the made whole doctrine by failing to provide it with an opportunity to defend its interests in the original tort action and settlement agreement. The Abbotts, on the other hand, contend that Blount County knew of the underlying tort action and chose not to become a party to it, thereby waiving its right to assert a subrogation claim. The Abbotts additionally rely on *Tennessee Farmers Mutual Insurance Company*

*v. Farmer*, No. 03A01-9610-CH-00327, 1998 WL 695637 (Tenn. Ct. App. Aug. 20, 1998) (*no perm. app. filed*), to support their argument that the made whole doctrine applies in this case because "the facts are clear that the recovery did not make the insured whole, even if the insurer did not agree to the settlement." Their argument, as we understand it, is that assuming, *ad arguendo*, that Blount County did not waive its subrogation claim by failing to intervene in the underlying action, the made whole doctrine applies in this case to defeat a subrogation claim because the severity of Ms. Abbott's injuries clearly demonstrate that Ms. Abbott was not made whole by the settlement agreement.

We first turn to the question of whether an insured may commence an action against third-party tortfeasors without notice to the insurer, settle the action out of court without the agreement of the insurer, and assert the made whole doctrine as a defense against the insurer's right to subrogation in a subsequent declaratory judgment action. The Abbotts cite the unreported cases of *Nelson v. Innovative Recovery Services, Inc.*, No. M2000-03109-COA-R3-CV, 2001 WL 1480515 (Tenn. Ct. App. Nov. 21, 2001) (*no perm. app. filed*), and *Tennessee Farmers Mutual Insurance Company v. Farmer*, No. 03A01-9610-CH-00327, 1998 WL 695637 (Tenn. Ct. App. Aug. 20, 1998)(*no perm. app. filed*), for the proposition that, although an insurer's subrogation claim must be honored when it did not participate in the settlement negotiations between the insured and the third-party tortfeasors, the subrogation interest may be defeated by the made whole doctrine where the insurer and insured have agreed that the insured was not made whole or where the underlying facts are clear that the recovery did not make the insured whole. Their argument, as we understand, is that because Ms. Abbott suffered damages that cannot be rectified by any amount of money, including her loss of memory and on-going pain and suffering, she clearly was not made whole by the settlement agreement and, therefore, the made whole doctrine must be applied. The Abbots reliance on *Tennessee Farmers* and *Nelson* in support of this argument, however, is misplaced.

Subrogation permits an insurer to "stand in the shoes" of its insured to assert the rights of the insured against a third party. *York,* 8 S.W.3d at 618-19. An insurer's right to subrogation rests on the premises that an insured should not be permitted to recover twice for the same loss and that the tortfeasors should compensate the insurer for payments the insurer made to its insured. *Id.* However, before an insurer's subrogation right arises, the insured must be made whole. *Wimberly v. Am. Cas. Co.*, 584 S.W.2d 200, 203 (Tenn. 1979). An insured is not made whole when the amount paid by the insurer plus any amount recovered from the tortfeasors is less than the amount of the insured's losses. *Id.* at 201; *Eastwood v. Glens Falls Ins. Co.*, 646 S.W.2d 156, 158 (Tenn. 1983).

*Wimberly*, however, does not stand for the proposition that an insured may settle with a tortfeasor for less than an amount that would make the insured whole, without the consent of his insurer, and then assert the made whole doctrine to defeat the insurer's subrogation right. *Eastwood*, 646 S.W.2d at 158. In *Eastwood*, plaintiffs commenced a negligence action against third-party tortfeasors for fire losses sustained to plaintiffs' buildings and its contents. *Id.* at 157. Glens Falls Insurance Company and Marine Office of America (collectively, "insurers"), plaintiffs' insurance carriers, intervened in the action to protect their subrogation rights. *Id.* Insurers refused to waive their subrogation rights during settlement negotiations. *Id.* Plaintiffs filed an amended complaint

alleging they were willing to accept the settlement offer if their insurers would waive subrogation rights. *Id.* Plaintiffs filed a motion for summary judgment asserting that, under *Wimberly*, they were permitted to accept the settlement agreement without their insurers' consent and that insurers would have no right to subrogation because plaintiffs would not be made whole by the settlement agreement. *Id.* The trial court denied plaintiffs' motion for summary judgment.

On interlocutory appeal, the court of appeals affirmed. The Tennessee Supreme Court granted permission to appeal and affirmed, rejecting plaintiffs' reading of *Wimberly*. The *Eastwood* court distinguished *Wimberly*, noting that in *Wimberly* the insurer had consented to the settlement agreement between its insured and third-party tortfeasors. Accordingly, the insurer in *Wimberly* could not assert a subrogation right where it knew its insured had not been made whole by the settlement to which the insurer had consented. *Id.* at 158. The *Eastwood* court opined,

> [n]othing that was said in *Wimberly* diminishes or in any measure affects the obligation of the insured to obtain the written consent of his or her insurer who has subrogation rights prior to a settlement with a tort feasor. *Wimberly* clearly stands for and all that it stands for is that when an insured has been paid the policy limits of his or her fire policy and the insured and his or her fire insurance carrier have agreed to a settlement with a tort feasor that when added to the fire insurance proceeds is less than the insured's fire loss, the insurer's subrogation rights cannot be enforced, because the insured has not been made whole."

*Id.* Accordingly, plaintiffs could not assert the made whole doctrine to defeat their insurer's right to subrogation by agreeing to settle with the third-party tortfeasors without the insurer's consent to waive its subrogation right. *Id.* at 157.

In the case now before this Court, Abbotts contend that, notwithstanding *Eastwood*, a plaintiff may agree to settle with a tortfeasor without the consent of his insurer and defeat the insurer's subrogation right if the underlying facts clearly demonstrate that the insured was not made whole by the settlement. As the Abbotts observe, in *Tennessee Farmers*, we stated,

> [t]he cases subsequent to *Wimberly* have not applied the [made whole] doctrine to defeat the subrogation claim of the insurer unless the parties have either agreed that the insured has not been made whole by the tort recover[y], or the underlying facts are clear that the recovery did not make the insured whole.

*Tennessee Farmers Mut. Ins. Co. v. Farmer*, No. 03A01-9610-CH-00327, 1998 WL 695637, at *2 (Tenn. Ct. App. Aug. 20, 1998)(*no perm. app. filed*). The Abbotts agree that the parties in the present case have not agreed that the insured has not been made whole. They assert, however, that the nature and extent of Ms. Abbott's injuries, including her loss of future income and pain and suffering, unequivocally indicate that she has not been made whole and that, therefore, the underlying facts are clear that the out of court settlement did not make her whole. There is nothing in the record, however, to indicate a damage amount beyond medical expenses of $223,000.

-5-

Although it is apparently undisputed that Ms. Abbott will not be able to return to work and has experienced and will continue to experience considerable pain and suffering, there is nothing in the record that even attempts to valuate the extent of those damages.

The fact that a party has been injured, albeit horrifically, however, is not the sole fact for consideration by the court in determining whether the insured has been made whole. A reading of *Tennessee Farmers* beyond the quoted sentence, moreover, clearly illustrates that *Tennessee Farmers* does not propose that it is. The facts considered in *Tennessee Farmers* were the facts of the proof of damages and the facts of the settlement itself. The record in *Tennessee Farmers* revealed only proved medical damages of $16,000 and a settlement of $45,000. *Id.* at *3. We noted, "[a]ppropo of the problem is the speculation that inherent in her [the insured's] voluntary acceptance of the $45,000.00 is an acknowledgment that she was thereby made whole. Her argument that she was not made whole could in the same vein apply if the settlement had exceeded $45,000.00." *Id.* Thus, in *Tennessee Farmers*, we held that the plaintiff failed to carry the burden to demonstrate that she had not been made whole where the settlement clearly exceeded her medical expenses and where there was no affirmative proof of the amount of additional loss. *Id.* We accordingly held that the insurer was entitled to subrogation. *Id.* at *4.

*Nelson* raised similar factual issues. In *Nelson*, the insurer paid medical expenses of $6,226.27 to an insured who was injured in an automobile accident. *Nelson v. Innovative Recovery Servs., Inc.*, No. M2000-03109-COA-R3-CV, 2001 WL 1480515, at *4 (Tenn. Ct. App. Nov. 21, 2001) (*no perm. app. filed*). The record revealed this payment and lost wages of approximately $3000. *Id.* An interpleader complaint asserted medical expenses of $28,500. *Id.* n2. Without providing notice to the insurer or providing the insurer with an opportunity to defend its subrogation interest, the insured in *Nelson* released the owner of the vehicle from liability and recovered $25,000 in an out-of-court settlement with driver. *Id.* The insured then asserted that she had not been made whole by the settlement, but that the $25,000 settlement represented the insurance policy limits of the otherwise insolvent tortfeasors. *Id.*

We noted in *Nelson* that the record in that case contained no proof or findings of fact demonstrating whether the insured was made whole by the settlement. *Id.* We also noted that the record provided no proof that the tortfeasor was insolvent other than the assertions of the insured, and that the insurer was never provided an opportunity to investigate the solvency of the tortfeasor or the owner of the vehicle. *Id.* Thus, we held that the insured had not carried her burden of proof to demonstrate that she had not been made whole. *Id.*

Reading *Tennessee Farmers* and *Nelson* together and in light of the supreme court's holding in *Eastwood*, it is clear that, as a general rule, an insured may not utilize the made whole doctrine to defeat an insurer's subrogation interest by settling out of court with a third-party tortfeasor without the agreement or consent of the insurer. A limited exception exists only where it is clear to the court that the amount recovered by the settlement is the best recovery possible and that the insured's affirmatively demonstrated damages exceed the combined amount recovered by the settlement and amounts paid by the insurer. The "underlying facts" to be considered by the court in determining

whether the insured has been made whole by the settlement include more than the fact that the insured has suffered serious injury. They include evidence of damages; evidence that the recovered amount was less than those damages; and evidence that the settlement was the best possible in light of all the circumstances.

For example, in *Brown v. Nowlin*, five year-old Taylor Brown (Taylor) sustained severe injuries when she was ejected from a vehicle which was struck by Jerry Nowlin (Mr. Nowlin). *Brown v. Nowlin*, No. W2001-01455-COA-R3-CV, 2001 WL 1584155, at *1 (Tenn. Ct. App. Nov. 30, 2001) (*no perm. app. filed*). She received extensive care for her injuries at LeBonheur Children's Medical Center in Memphis. *Id.* It was undisputed that medical bills were over $134,000 for the first 30 days of treatment alone. TennCare, Tennessee's Medicaid waiver project, paid $81,887.98 of this amount. *Id.* As a result of injuries sustained in the accident, Taylor was made quadriplegic and dependent on a ventilator. *Id.*

Taylor's legal counsel contacted TennCare administrators to request the amount of TennCare's subrogation interest. *Id.* TennCare agreed to reduce its subrogation interest by 50%, but its legal counsel advised that it intended to intervene to protect TennCare's subrogation interests. *Id.* Taylor commenced a cause of action, intending to hold the matter for trial pending the Tennessee Supreme Court's holding in *Blankenship v. Estate of Bain*, 5 S.W.3d 647 (Tenn. 1999) regarding the applicability of the made whole doctrine to TennCare.[2] *Id.* In her complaint, Taylor sought $5 Million in compensatory damages. *Id.* n3.

In the meantime, Taylor was made aware that Mr. Nowlin was not cooperating in the defense of the claim and that his insurance company was likely to request a declaratory judgment in order to refuse coverage of Mr. Nowlin per the contract of insurance. Taylor determined that Mr. Nowlin had no executable assets with which to satisfy a verdict and determined that the action was best settled in order to avoid loss of all monies which may have been available. *Id.* at *1. The parties agreed to settle for $100,000. *Id.* The trial court entered an order approving the settlement and specifically finding that the settlement did not make Taylor whole. *Id.* TennCare neither participated in nor consented to the settlement. Id. at *3.

In *Brown*, TennCare asserted that, under *Tennessee Farmers*, the made whole doctrine could not be applied to defeat its subrogation claim. *Id.* Our analysis in *Brown*, however, was guided by a determination of whether, in light of *Eastwood* and *Tennessee Farmers*, the underlying facts made it clear that Taylor was not made whole by the recovery. *Id.* at *4. Additionally, we noted that *Brown* presented a unique circumstance not present in *Eastwood* or its progeny. *Id.* The settlement in *Brown,* made on behalf of a minor and approved by order of the trial court, included a specific finding that Taylor was not made whole by the recovery. *Id.* at *5. Indeed, the settlement in Brown was substantially less than the medical bills for Taylor's first 30 days of treatment alone. The trial court's order approving the settlement also included a specific finding that, as a result of injuries

---

[2]The *Blankenship* court held that TennCare was subject to the made whole doctrine. *Blankenship*, 5 S.W.3d at 649. This holding was legislatively overruled. Tenn. Code Ann. §71-5-117, amended May 2000.

sustained in the accident, Taylor was a quadriplegic who would be disabled and dependent on a ventilator for the rest of her life. *Id.*

Critical to our analysis in *Brown* was the fact that, under Tennessee Code Annotated § 34-11-121(b)(1996), the trial court was bound by statute to act in the best interests of Taylor in approving the settlement. *Id.* Implicit in the trial court's order, therefore, was a finding that it was in the best interest of Taylor to accept the settlement and that it represented the best recovery possible. TennCare, moreover, did not challenge the trial court's specific findings or Taylor's assertion, and the trial court's implicit finding, that the limited recovery was all that could be recovered from Mr. Nowlin. *Id.* at *4-5. Thus, the underlying facts in *Brown* included not only the nature and extent of Taylor's injuries, but the circumstances of the settlement, the trial court's findings in its order approving the settlement, and the trial court's statutory duty to act in Taylor's best interest. We stated:

> We are satisfied that in approving the limited recovery on behalf of the minor, Taylor Brown, the trial court acted in her best interest. It approved a very limited settlement because it was all that could be recovered, even while recognizing that Taylor Brown was not made whole. Given this situation, we think it of little consequence that TCCN did not participate in the settlement directly. Under these particular facts, and since TennCare was subject to the made whole doctrine at the time of this case, TCCN's subrogation interest could not have arisen even if TCCN had intervened. Therefore, there has been no injury to TCCN's ability to protect its rights.

Id. at *5. Accordingly, under these unique facts, we affirmed the trial court's judgment in *Brown* that the made whole doctrine defeated TennCare's subrogation claim.

As noted above, the 2001 accident resulting in injury to Ms. Abbott involved two vehicles in addition to hers. The transcript of the settlement agreement reached by the Abbotts, without the consent or participation of Blount County, clearly indicates that the agreement was intended, in part, to reduce the risks of comparative fault, including the possibility of greater fault being assigned to the driver with less insurance. Additionally, the Abbotts chose not to pursue recovery for any amount greater than the insurance coverage of the tortfeasors, and they settled for approximately $75,000 to $100,00 less than the total amount of insurance coverage available. The trial court must also take these facts into consideration when determining whether the made whole doctrine applies in this case to defeat Blount County's subrogation claim.

The trial court's finding that Ms. Abbott was not made whole in this case consists of its statement that "[t]here is no price you could put on the injuries this lady has suffered, no price . . . . There is no amount of money that could have made Ms. Abbott whole[.]" The trial court made no findings of any damage amount other than medical expenses of $223,000. It simply stated that in light of the severity of her injuries, neither the $1,275,000 out-of-court settlement nor any amount of money could possibly make her whole. This is neither proof nor finding of damages.

-8-

We appreciate the trial court's sentiment that no amount of money can undo the injuries suffered by Ms. Abbott. However, in order to be compensable, damages must be valuated monetarily. In a wrongful death action, for instance, no amount of money can bring back a mother, father, or child who has died because of another's negligence. However, because it is the only mechanism that we have yet devised to try to compensate, in at least some measure, those left behind, we attempt to assign a monetary value to the loss. We are not unmindful that, in a larger, more essential sense, no amount of money can truly compensate. But, in terms of what the legal system can provide in a civil action, it's all we have.

Compensable damages must be proved in compensable terms; in other words, they must be valuated monetarily. Further, in a case involving the made whole doctrine, the burden of proof is on the insured to demonstrate that the settlement did not make her whole in light of all the facts, including the facts surrounding the amount recovered by settlement and the amount of recovery available. *E.g., Tennessee Farmers Mut. Ins. Co. v. Farmers*, No. 03A01-9610-cH-00327, 1998 WL 695637, at *3 (Tenn. Ct. App. Aug. 20, 1998)(*no perm. app. filed*). In light of the foregoing, we disagree with the trial court that no genuine issue of material fact exists regarding whether Ms. Abbott was made whole by the settlement agreement.

We next turn to the Abbotts' contention that Blount County waived its subrogation right by failing to intervene in the underlying cause of action that resulted in the out-of-court settlement. The Abbotts assert Blount County should have known that they would initiate a lawsuit against the third-party tortfeasors because of the extent of Ms. Abbott's injuries and because they reserved their right to assert the made whole doctrine when they completed forms agreeing to reimburse Blount County if funds were recovered from a third party. Blount County asserts the Abbotts did not inform it of their cause of action or seek its consent to an out-of-court settlement. Additionally, Blount County directs our attention to correspondence from the Abbotts' legal counsel to the administrator of Blount County's benefit plan in which the Abbotts' counsel inquired whether Blount County would be willing to come to some agreement regarding the Abbotts' obligation to reimburse the benefit plan. There is no evidence in the record that the Abbotts provided Blount County with written notice of their cause of action or settlement negotiations before they agreed to the settlement, and the record does not demonstrate that Blount County had actual notice of either. Certainly, an assertion that an insurer should know, in light of the gravity of the injuries, that its injured insured may, at some time within the statutory period, commence a cause of action is not proof that the insurer waived its subrogation claim. Genuine issues of material fact exist regarding whether Blount County had notice, written or actual, of the Abbotts' cause of action and waived its subrogation rights.

### *Holding*

Genuine issues of material fact exist in this case regarding whether Blount County had notice of the Abbotts' cause of action against the third-party tortfeasors and, if so, waived its claim to subrogation. Genuine issues of material fact also exist regarding whether Ms. Abbott was made whole by the total amount paid by Blount County and recovered in the settlement. Accordingly, we reverse the award of summary judgment to the Abbotts. We remand this case for further proceedings

consistent with this opinion. Costs of this appeal are taxed to the Appellees, Shelby Abbott and Charles Abbott.


_____
DAVID R. FARMER, JUDGE