# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
June 6, 2007 Session

## HEALTH COST CONTROLS, INC. v. RONALD GIFFORD

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Weakley County**
**No. 15726      W. Michael Maloan, Chancellor**

---

**No. W2005-01381-SC-R11-CV - Filed October 17, 2007**

---

This case comes before us on an appeal of the trial court's finding that the injured party was not made whole by his recovery for injuries received in an automobile collision. We conclude that the trial court erred in its computation of the injured party's total recovery by failing to consider the injured party's recovery from all sources. We also conclude that the record is insufficient to determine whether the injured party has been made whole. Accordingly, we remand this case to the trial court for the purpose of permitting both parties to present evidence. The injured party will have the burden of presenting evidence that sufficiently enables the trial court to make a reasonable assessment of the injured party's damages. The trial court will determine the monetary value of the injured party's recovery from all sources and the monetary value of all elements of the injured party's damages. Finally, if the trial court finds that the injured party has been made whole, reimbursement should be awarded to the insurer only to the extent that the injured party's total recovery exceeds the injured party's total damages.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Trial Court Reversed;**
**Case Remanded to the Trial Court for Further Proceedings**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK and GARY R. WADE, JJ., joined.

Bruce Stephens Conley, Union City, Tennessee, and H. Max Speight (at trial), Dresden, Tennessee, for the Appellant, Ronald Gifford.

Edwin Lauderdale Rawson, John Morris Russell, and Thomas H. Lawrence, Memphis, Tennessee, and Julie Yarborough McLaughlin, Cordova, Tennessee, for the Appellee, Health Cost Controls, Inc.

**OPINION**

## I. Factual & Procedural History

This case returns to us after a protracted procedural history. Although we recited many of the following facts in Health Cost Controls, Inc. v. Gifford, 108 S.W.3d 227 (Tenn. 2003) ("Health Cost Controls I"), we provide the following summary of the factual and procedural history for ease of reference. On March 18, 1997, Ronald Gifford ("Gifford") suffered serious injuries while riding as a passenger in a vehicle owned by his mother. As a result of the collision, Gifford incurred medical expenses in excess of $45,000. Prudential Insurance Company ("Prudential") paid $37,795.08 of his medical expenses. Another health care insurer, referred to in the record simply as "BMC," paid $7,358.95. Gifford paid the remaining balance.

Gifford pursued a tort claim against his mother's liability insurance carrier. The claim ultimately was settled for the policy limits of $100,000. After the settlement, Health Cost Controls ("HCC"), the assignee of Prudential, sought reimbursement for the $37,795.08 paid by Prudential for Gifford's medical expenses.

On June 30, 1999, the trial court ordered Gifford to reimburse HCC. The Court of Appeals affirmed the judgment of the trial court. We granted review and remanded the case to the Court of Appeals for reconsideration in light of our decision in York v. Sevier County Ambulance Authority, 8 S.W.3d 616 (Tenn. 1999). The Court of Appeals again affirmed the judgment of the trial court, and we again granted review. We reversed the Court of Appeals and remanded the case to the trial court for a factual determination of whether Gifford had received full compensation for his injuries because the lower courts did not adequately address the issue of whether Gifford had been made whole. Health Cost Controls I, 108 S.W.3d at 231.

On June 11, 2004, almost a year after our decision in Health Cost Controls I, HCC filed a motion requesting the trial court to determine whether Gifford had been made whole based upon the record. Gifford filed a response arguing that HCC's motion sought to deprive him of the opportunity to present evidence supporting his contention that he was not made whole by his recovery from Prudential, BMC, and his mother's liability insurance carrier. Specifically, Gifford stated that "[t]his Motion of the Plaintiff is another effort to circumvent the law of the State of Tennessee in that it seeks a determination by the Court without Defendant having the opportunity to present facts and evidence to the Court for determination." The trial court later allowed Gifford to file a copy of his deposition and the medical report of Dr. Robert Christopher. Gifford's deposition, taken by HCC after Health Cost Controls I, addresses the extent of Gifford's economic damages and the benefits he received from Prudential, BMC, and his mother's liability carrier. The medical report details Gifford's injuries and treatment and concludes that Gifford had suffered a seven percent impairment to his right arm. No other evidence is contained in the record, and it is unclear whether the trial court provided the parties with an opportunity to present additional evidence or argument.

Based upon the limited evidence before it, the trial court concluded as follows: "In light of the severity of the physical and emotional injuries, and the medical bills incurred, the Court finds Gifford has not been made whole by the settlement proceeds in this case." HCC appealed, and the Court of Appeals reversed the trial court's ruling. We granted review to clarify the requirements of the made-whole doctrine.

## II. Analysis

We first discussed the made-whole doctrine in Wimberly v. American Casualty Co. of Reading, Pennsylvania, 584 S.W.2d 200 (Tenn. 1979). In Wimberly, the plaintiffs suffered $44,619.10 in damages when their restaurant was destroyed by a fire caused when an automobile drove into the restaurant. The plaintiffs recovered $15,000 from their fire insurance carrier and $25,000 from the automobile driver's liability insurance carrier. The fire insurance carrier then sought a subrogation interest against the proceeds of the liability insurance. We observed that subrogation is an equitable doctrine designed to prevent insured parties from being unjustly enriched by a double recovery. Wimberly, 584 S.W.2d at 203. Because there is no threat of unjust enrichment when an injured party's recovery does not fully compensate that party for his or her damages, we held that an insurer's subrogation interest does not arise until the injured party is made whole. Id. Accordingly, we concluded that the plaintiffs' fire insurance carrier was not entitled to a subrogation interest against the proceeds of the liability insurance because the plaintiffs' total recovery of $40,000, $15,000 from fire insurance plus $25,000 from liability insurance, did not fully compensate the plaintiffs for their $44,619.10 loss. Id.

In York, we held that the made-whole doctrine also applies to an insurer's right of reimbursement because "a right to reimbursement raises many of the same equitable issues involved in subrogation." 8 S.W.3d at 620. We further held that the made-whole doctrine cannot be waived by language in the insurance contract. Id. at 621.

In Health Cost Controls I, we affirmed our decisions in Waverly and York and held that the trial court erred in granting summary judgment because it "did not determine whether there was a genuine issue as to whether Gifford had been made whole for his damages." 108 S.W.3d at 231. We observed that the trial court's failure deprived Gifford of the opportunity to "argue, establish, or prove that he had not been 'made whole.'" Id. We also stated that "the key issue in any such case requires a factual determination of whether the insured has received compensation for the damages incurred." Id.

Since our decision in Health Cost Controls I, we have had another opportunity to address the made-whole doctrine. In our recent decision of Abbott v. Blount County, 207 S.W.3d 732, 735 (Tenn. 2006), we reiterated that "[w]hether an insured has been made whole is a matter of fact" and explained that the insured has the burden of proving that the insured has not been made whole. We concluded that there were "genuine issues of material fact regarding whether the [plaintiffs] were made whole" because we were unable to determine from the record the total monetary value of the

plaintiffs' losses in that case. Abbott, 207 S.W.3d at 735-36. Accordingly, we held that summary judgment was inappropriate. Id.

We now turn to the issue before us. Whether a party has been made whole requires a factual determination. Id. at 735. We therefore must review the trial court's findings de novo with a presumption of correctness unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d); Stewart v. Sewell, 215 S.W.3d 815, 821 (Tenn. 2007). As we demonstrated in Wimberly, a party's total recovery is determined by adding all benefits received as a result of an incident. See 584 S.W.2d at 203. In this case, Gifford received $37,795.08 in benefits from Prudential, $7,358.95 from BMC, and a settlement from his mother's insurer of $100,000, for a total recovery of $145,154.03. The trial court's order, however, makes no mention of Gifford's recovery from Prudential or BMC. Furthermore, the trial court's conclusion that "Gifford has not been made whole by the settlement proceeds" indicates that the trial court included only the settlement proceeds in computing Gifford's total recovery. We must therefore conclude that the evidence preponderates against the trial court's calculation of Gifford's total recovery.

The trial court's order provides us with few additional findings upon which to conduct our de novo review. Although the trial court concluded that Gifford's medical bills "exceeded $45,000" and characterized Gifford's physical and emotional injuries as severe, the trial court made no specific findings with regard to the exact monetary value of Gifford's medical bills or of his physical and emotional injuries. Unfortunately, the record does not include Gifford's medical bills or the medical records for Gifford's initial treatment. While Dr. Christopher's report provides an impairment rating and job restrictions, there is no information in the record from which we can determine the impact of Gifford's restrictions on his earning capacity. Most significantly, the record lacks Gifford's testimony concerning the extent of his injuries and the impact of those injuries on his daily life. Although Gifford's deposition testimony briefly addresses these topics, it is clear that HCC's questioning of Gifford focused on establishing the amounts paid by the various insurers and the amounts of Gifford's medical bills and lost wages. Based on this limited record, we are unable to determine whether Gifford's total recovery of $145,154.03 exceeds his total damages.

We are unable to determine why the record is not more fully developed. It is clear that Gifford's initial position in the trial court was that Health Cost Controls I afforded him an opportunity to present facts and evidence. The record does not enlighten us as to why that opportunity was not provided or if, in fact, Gifford waived his initial position. Although the trial court allowed Gifford to introduce his deposition as well as Dr. Christopher's medical report, no additional evidence was taken by hearing or otherwise. We are therefore unable to determine whether Gifford has had a full opportunity to present evidence that he has not been made whole. Accordingly, we again remand this case to the trial court for a factual determination of whether Gifford has been made whole. This determination should be made in accordance with the procedures set forth in this opinion.

Trial courts should support their made-whole determinations with specific findings of fact regarding the monetary value of the injured party's recovery from all sources and the monetary value

of the injured party's total damages. Furthermore, trial courts should make specific findings as to the value of each separate element of an injured party's damages. Finally, if the trial court finds that the injured party has been made whole, reimbursement should be awarded to the insurer only to the extent that the injured party's total recovery exceeds the injured party's total damages. These requirements are necessary to ensure that the made-whole doctrine is consistently applied and to facilitate appellate review of made-whole determinations.

We recognize that requiring these factual determinations will sometimes necessitate the additional time and expense of conducting a proceeding in the nature of a trial. Such a proceeding, however, may be the only reliable means to determine whether an injured party has been made whole. Other jurisdictions have reached the same conclusion. Faced with a case in which the trial court had conducted a trial to determine if an injured party was made whole, the Wisconsin Supreme Court stated,

> the trial judge was confronted with a problem that required judicial resolution. . . . The assumption on which the trial judge proceeded was that, under the circumstances, only a trial in which the various items of damages would be ascertained could determine what sum would have made the plaintiffs whole. Regrettable as we consider the necessity of having any trial at this tag end of a complicated lawsuit, we conclude the trial judge proceeded appropriately.

Rimes v. State Farm Mut. Auto. Ins. Co., 316 N.W.2d 348, 356 (Wis. 1982); see also O'Brien v. Two W. Hanover Co., 795 A.2d 907, 912 n.2 (N.J. Super. Ct. App. Div. 2002) ("[A] mini-trial may be necessary if there is a legitimate, good faith dispute regarding whether the settlement proceeds represent the full amount of plaintiff's damages.").

To provide further guidance regarding the application of the made-whole doctrine, we must also address the Court of Appeals' reasoning concerning the calculation of Gifford's total damages. The Court of Appeals reasoned that Gifford's total damages should include only those damages for which Gifford had proven the precise monetary value. Gifford presented evidence of the monetary value of his medical expenses but did not present evidence of the value of his non-economic damages. Accordingly, the Court of Appeals determined that Gifford's total damages were limited to his medical expenses. The flaw in this analysis is that plaintiffs are not always required to present evidence of the precise monetary value of non-economic damages. See Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) ("[P]roof must be as certain as the nature of the case permits and must enable the trier of fact to make a fair and reasonable assessment of the damages."). Damages such as lost wages or medical expenses have a monetary value that is readily ascertainable. It is therefore reasonable to require that plaintiffs prove the monetary value of such damages with relative precision. On the other hand, plaintiffs are generally not required to present proof of the precise monetary value of non-economic damages such as pain and suffering. See 22 Am. Jur. 2d Damages § 200 (2007) ("[D]amages for pain and suffering are not susceptible to proof by a specific dollar amount."). Accordingly, we conclude that for purposes of the made-whole doctrine it is sufficient for an injured party to present evidence of non-economic damages that is "as certain as the

nature of the case permits" and that "enable[s] the trier of fact to make a fair and reasonable assessment of the damages." <u>Overstreet</u>, 4 S.W.3d at 703.

## Conclusion

We conclude that the trial court erred in its computation of Gifford's total recovery by failing to consider Gifford's recovery from all sources. We further conclude that the record is insufficient to determine whether Gifford has been made whole. On remand to the trial court, both parties will be permitted to present evidence. Gifford will have the burden of presenting evidence that sufficiently enables the trial court to make a reasonable assessment of his damages. The trial court will determine the monetary value of Gifford's recovery from all sources and the monetary value of all elements of Gifford's damages. Finally, if the trial court finds that Gifford has been made whole, reimbursement should be awarded to HCC only to the extent that Gifford's total recovery exceeds his total damages. The costs are taxed one-half to Ronald Gifford and one-half to Health Cost Controls, Inc., for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE