Robin CUNNINGHAM

v.

Norman E. JONES, M.D., et al.

Court of Appeals of Tennessee,
Western Section, at Nashville.

Nov. 27, 2007 Session.

March 14, 2008.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 29, 2008.

Christopher Kim Thompson, Murfreesboro, TN, for Appellant.

Phillip North, Renee Levay Stewart, Nashville, TN, for Appellee Norman E. Jones, M.D.

## OPINION

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

This is an appeal from a grant of a motion for summary judgment. In 2002, the treating physician referred his patient to the hospital for testing. A radiologist at the hospital reviewed the patient's test results, creating a radiology report. The findings in the report indicated that the patient did not suffer from renal failure. The top portion of the report labeled "Indications" stated "renal failure." Thereafter, the report was placed in the patient's file and also sent to the treating physician, who told the patient that she did not have renal failure. It was reported to her insurance, though, that the patient had renal failure. The trial court granted summary judgment for the claim against the radiologist, and the patient appeals. We reverse and remand for further proceedings.

## I. FACTS & PROCEDURAL HISTORY

On November 12, 2002, Robin Cunningham ("Plaintiff" or "Appellant") visited her physician, Dr. Daniel Azabache, for what she thought was a kidney infection. Dr. Azabache had previously examined Plaintiff in 2000 when she experienced the same symptoms. Dr. Azabache referred Plaintiff to Bedford County Medical Center on November 15, 2002 for an IVP tomography test. This test is basically an x-ray of the kidney and bladder area. Dr. Azabache's request form submitted to Bedford County Medical Center to perform the IVP test on Plaintiff stated "R/O [Rule Out] Renal Failure".

Dr. Norman Jones ("Defendant" or "Appellee"), a board certified radiologist at Bedford County Medical Center, reviewed Plaintiff's IVP test results. Defendant did not actually perform the test, nor did he meet with Plaintiff. Defendant dictated his medical opinion concerning the results of the test, creating a Radiology Report. The computerized report had an "Indications" caption at the top, which was completed by a different individual. The indication stated "renal failure." In the report, Defendant indicated under "findings" that "renal function is present bilaterally," which both parties agree, rules out a diagnosis of renal failure. At the bottom of the report, Defendant's electronic signature is present with a signing date of November 16, 2002. According to Defendant, he must read a report before he is able to electronically sign; however, he stated that he did not notice at the top of Plaintiff's report the indication stating renal failure before he electronically signed. The report was then sent to Dr. Azabache's office, but Defendant and Dr. Azabache did not discuss the report with each other. The report was also placed in Plaintiff's medical records file at Bedford County Medical Center.

Dr. Azabache thereafter advised Plaintiff that she did not have renal failure. According to Plaintiff, Bedford County Medical Center and Dr. Jeffrey Wade billed Plaintiff's insurance company, BlueCross, for the aforementioned services using ICD–9 code "586.0" which denotes renal failure.

In January of 2004, Plaintiff took a new job and obtained different insurance, dropping her BlueCross policy. She left this job in June of 2005, however, and reapplied for BlueCross insurance. Plaintiff contends that she is now unable to obtain private insurance because her insurance records indicate that she had renal failure in 2002. Plaintiff brought suit on January 23, 2006 against Dr. Azabache, Dr. Wade, and Bedford County Medical Center. Plaintiff added Defendant in her second amended complaint, alleging that Defendant owed her a duty to advise Dr. Azavache and Bedford County Medical Center that she did not have renal failure so the correct ICD–9 coding could be submitted to her insurance provider. Plaintiff averred that Defendant "failed in that duty which is negligence and the proximate [sic] or contributed to the proximate cause of Plaintiff's damages."

On March 15, 2007, Defendant filed a motion for summary judgment pursuant to Rule 56 of the Tennessee Rules of Civil Procedure. The trial court granted Defendant's motion, finding as follows:

[T]here are no genuine issues of material fact and [ ] Defendant [ ] is thereby entitled to a judgment in his favor as a matter of law. Additionally, the Court specifically finds: (1) Plaintiff's cause of action against Defendant [ ] is a claim for medical malpractice; (2) Plaintiff failed to file a responsive affidavit in compliance with Tenn.Code Ann. § 29–26–115; (3) Plaintiff's cause of action against Defendant [ ] is barred by the

applicable statute of repose; and (4) Defendant [ ] did not breach his duty, if any existed, to Plaintiff. . . .

The trial court made this order final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, and this appeal timely followed.

## II. Issues Presented

Appellant presents the following issues for review, which we slightly reword:

1. Whether the trial court erred in finding that Plaintiff's cause of action was a medical malpractice claim instead of a negligence claim.
2. Whether the trial court erred in finding that Dr. Norman Jones did not owe a duty to Plaintiff with regard to the ICD–9 insurance coding.

For the following reasons, we reverse and remand for further proceedings.

## III. Standard of Review

■■■■ When the trial court grants a motion for summary judgment, we review the decision *de novo* with no presumption of correctness. *Abbott v. Blount County,* 207 S.W.3d 732, 735 (Tenn.2006) (citing *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002)). "Summary judgment is appropriate only when the moving party has shown that there is no genuine issue of material fact and that the party is entitled to summary judgment as a matter of law." *Id.* (citing *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn.2002)). The trial court and the reviewing court should not regard the summary judgement procedure "as a substitute for trial of disputed factual issues." *Jones v. Home Indem. Ins. Co.,* 651 S.W.2d 213, 214 (Tenn.1983); *see also Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville,* 154 S.W.3d 22, 41 (Tenn. 2005) (stating that summary judgment is inappropriate if there is any doubt as to whether a genuine issue of material fact

exists). Just as the trial court, we must view the evidence in a light most favorable to the non-moving party, draw all reasonable inferences in the non-moving party's favor, *Abbott,* 207 S.W.3d at 735 (citing *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002)), and disregard all countervailing evidence. *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993).

## IV. Discussion

### A. Medical Malpractice or Negligence

■■■ First, we must decide if this is a medical malpractice claim or a common law negligence claim in order to determine whether a responsive affidavit was in fact required, and also whether Plaintiff's claim was barred by the medical malpractice statute of repose. We find that this is a negligence claim and not a claim for medical malpractice.

The Supreme Court decision of *Gunter v. Laboratory Corporation of America,* 121 S.W.3d 636 (Tenn.2003), is the controlling authority on this issue. In *Gunter,* the plaintiff alleged that the defendant laboratory negligently performed a paternity test which overstated the probability that he was the father of a child. *Id.* at 638. The plaintiff's claim stated a cause of action in negligence and breach of contract, in which the plaintiff sought economic damages as a result of his child support obligation. *Id.* The trial court granted the defendant's Rule 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted, reasoning that the medical malpractice one-year statute of limitations had run prior to the filing of the complaint. *Id.*

Our Supreme Court began its analysis in *Gunter* by determining whether the plaintiff's claim sounded in negligence or medical malpractice. *Id.* at 639. The Court pointed out that "not all cases involving

health or medical entities sound in medical malpractice." *Id.* at 640 (citations omitted). Looking to previous decisions, the Court stated that "the distinguishing feature [of a negligence versus a medical malpractice claim] is evident.... When a plaintiff's claim is for injuries resulting from negligent medical treatment, the claim sounds in medical malpractice. When a plaintiff's claim is for injuries resulting from negligent acts that did not affect the medical treatment of a patient, the claim sounds in ordinary negligence." *Id.* (citations omitted). The Court, citing to New York decisions, adopted the following analysis:

> [W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.

*Id.* at 641. Ultimately, the Court found that the plaintiff's claim against the laboratory was not a medical malpractice claim.

Turning back to the present case, Plaintiff's claim is not for injuries suffered from negligent treatment; rather the alleged negligent act is Defendant's failure to notify Dr. Azabache and Bedford County Medical Center that the "indication" section of his report listed renal failure. Dr. Azabache later told Plaintiff that she did not have renal failure, and thus, her medical treatment was not affected by the purported negligent conduct of Defendant. Defendant relies on *Ward v. Glover*, 206 S.W.3d 17 (Tenn.Ct.App.2006), but that case is distinguishable from the present case. In *Ward*, the Eastern Section of this Court affirmed the trial court's grant of summary judgment for the defendant, finding that the plaintiff's claim was in fact a claim of medical malpractice. The Court of Appeals reasoned as follows:

> Here, the plaintiffs allege that *medical professionals deviated from the standard of care* when they established policies for the hospital and when they failed to make sure that the adopted policies and procedures were being followed. Furthermore, they allege that these deviations, in turn, caused *injury* to the plaintiffs' child.

*Id.* at 26. In this case, Plaintiff is arguing that she has economically suffered because Defendant failed to read the top of the report that he signed, a report that indicated to her insurance company that she had renal failure. Thus, we find the case at bar to be distinguishable from *Ward* and hold that under the *Gunter* analysis, Plaintiff's claim sounds in negligence, not medical malpractice.

### B. Duty of Care

■ We next turn to the issue of whether the Defendant owed Plaintiff a duty. We find that a genuine issue of material fact exists as to whether Defendant owed Plaintiff a duty to notify Dr. Azabache and Bedford County Medical Clinic.

Defendant argues that "to the extent that [he] did have a duty to the Plaintiff as a consulting physician, his duty was fulfilled" by reading the test and preparing the report. Defendant further argues that he was not trained in ICD–9 insurance coding and owed Plaintiff no duty as to the insurance coding. Defendant testified as follows at the deposition hearing, however, concerning the top portion of his report which read "Indications: renal failure":

> Q. Okay. If you had observed in the indications when you were reading the report—and I understand that you testified that you didn't.

If you had observed that, where it says, Indications, renal failure, would you have done anything?

A. My understanding of this is that this is something that is put in by the requesting physician. In other words, in order for me to change that, I would have to call the requesting physician and have them make the change. I could not make the change myself. That's my understanding of it.

Q. [ ] So that's what you would have done if you had observed that it said renal failure?

A. Yes, but—what I'm saying is that that [sic] is the mechanism for making—

Q. A change.

A. —the change.

In her deposition, Plaintiff stated that she is a nurse, but worked in the past for various doctors handling their insurance billing. She testified at the deposition hearing concerning her knowledge of the proper method of insurance coding as follows:

Q. What about for a radiologist? Do you know what takes place with respect to coding as it goes down the process?

A. I do know the rules, yes.

Q. What are those?

A. The radiologist that does the test, whoever reads the test, if the diagnosis that was presented to them on the order form does not match the results, you do not code an incorrect diagnosis. You code symptoms, signs and symptoms.

Plaintiff also submitted an affidavit of Emily Hill,[1] which stated in relevant part, as follows:

2. I make these statements based upon my own personal knowledge, training, experience and education. I have reviewed all the pleadings, depositions and things which have been furnished to me so far in this case including [Defendant's] deposition.

. . .

4. ICD–9 codes are used in the reporting of a diagnosis of a patient when a bill is submitted to an insurance company or Medicare.

. . .

6. A Program Memorandum issued by The Centers for Medicare and Medicaid Services on ICD–9–CM Coding for Diagnostic Tests (Transmittal AB–01–144) states, "Note that physicians are responsible for the accuracy of the information submitted on a bill."

7. According to Transmittal AB–01–144, "If the results of the diagnostic test are normal or non-diagnostic, and the referring physician records a diagnosis preceded by words that indicate uncertainty (e.g., probable, suspected, questionable, rule out, or working), then the interpreting physician should not code the referring diagnosis. Rather the interpreting physician should report the sign(s) or symptom(s) that prompted the study." [W]hen the interpreting physician does not have the diagnostic information as to the reason for the test and the referring physician

---

1. Defendant argues that the affidavit of Ms. Hill is insufficient because "[w]hat a radiologist 'should have known' is something that only another radiologist should be able to testify to," and "is not legally sufficient to counter the affidavits submitted by [Defendant] ... under § 29–26–115." As we have already found, this is not a medical malpractice case, and thus this argument has no merit.

is unavailable, it is appropriate to obtain the information directly from the patient....

8. [Defendant] therefore had a duty to obtain the clinical information necessary to determine the reason for the requested study and to report the appropriate ICD–9–CM code to the patient's record and to the Hospital for billing purposes. He further had a duty to follow the ICD–9–CM guidelines for outpatient services in the reporting of the information which prohibit the reporting a code for the condition noted as "rule out". His failure to make any attempts to determine the reason for the test from the referring physician or the patient and his failure to follow ICD–9–CM guidelines ... resulted in an inappropriate diagnosis code being submitted to the payer.

. . .

And looking to Defendant's testimony, he stated that it would not be proper to preform an IVP test on someone who suffered from renal failure. The issue, then, is whether he had a duty to notify others that the top indications section of his report stated renal failure when he knew Plaintiff did not suffer from renal failure. Viewing the evidence in the light most favorable to Plaintiff and disregarding all countervailing evidence, we find that this issue of material fact is in dispute and should be determined by a trier of fact. In conclusion, summary judgment was inappropriate in this case.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the trial court and remand for further proceedings. Costs of this appeal are taxed to Appellee, Norman Jones, for which execution may issue if necessary.