IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 19, 2019 Session

## JOHNNY ALAN HOWELL, ET AL. v. NELSON GRAY ENTERPRISES, ET AL.

**Appeal from the Circuit Court for Johnson County**
**No. CC-17-CV-46   James E. Lauderback, Judge**

_____

**No. E2019-00033-COA-R3-CV**

_____

This appeal involves a motorcycle/vehicle collision that occurred when a vehicle exited from a restaurant parking lot and collided with the plaintiffs' motorcycle on a public highway. The plaintiffs filed a negligence and premises liability claim against the property owner, the restaurant owner, and the franchisee. The trial court granted the defendants' motion for summary judgment and noted that the defendants did not owe a duty of care to the plaintiffs, effectively negating an essential element of the plaintiffs' claim. The plaintiffs appeal. We affirm the grant of summary judgment by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Tyler R. Moffatt, Boone, North Carolina, for the appellants, Johnny Alan Howell and Charity L. Councill.

David A. Chapman and Adam F. Rust, Knoxville, Tennessee, for the appellees, Heather Joyner, McDonald's Corporation, and Nelson Gray Enterprises.

### OPINION

### I. BACKGROUND

This action arises out of a vehicular collision near the intersection of South Shady Street (also commonly known as U.S. Highway 421 or State Route 34) and Pioneer

Village Drive, located in Mountain City, Tennessee in Johnson County. The motorcycle of Johnny Alan Howell and Charity L. Councill (collectively, "Appellants") was struck by an Isuzu Trooper driven by Seth Hunter ("Hunter" or "non-party")[1] that was attempting to enter the highway from the McDonald's restaurant "drive-thru." Howell and Councill suffered numerous injuries to their persons as a result of this collision.

Nelson Gray Enterprises ("Nelson Gray") is a Tennessee general partnership and is the fee simple owner of a 2.2-acre tract located adjacent to the intersection of Pioneer Village Drive and South Shady Street. Nelson Gray leases a portion of this property to McDonald's Corporation ("McDonald's Corp.") who, in turn, subleases that portion to McDonald's USA, LLC ("McDonald's USA") for the operation of a McDonald's franchise restaurant business as of January 5, 2005. McDonald's USA, as franchisor, sub-leases the property to Heather Joyner, as franchisee, to operate the restaurant. This property has three points of egress and two points of ingress. The third point of egress ("the Third Egress Point"), the subject of this appeal, is a one lane drive to allow customers to exit the property onto the five-lane undivided South Shady Street (U.S. Highway 421).

Appellants filed suit against Nelson Gray as property owner, McDonald's Corp. as franchisor, and Joyner as franchisee (collectively, "Appellees"). The complaint contained both a negligence claim and a negligence per se claim.[2] Appellants alleged that the Third Egress Point is an unreasonably dangerous condition because it "promotes the uncontrolled flow of vehicular traffic into a five-lane undivided highway" without traffic control devices or warning signs. It is further alleged that the exit is unreasonably dangerous because it is "an unabated direct-access one-lane exit into a five-lane highway" and "permits, without warning" a left turn onto this highway. Appellees independently filed answers denying liability and subsequently moved for summary judgment.

Affidavits by Joyner and J. Alan Parham, P.E. ("Expert") were submitted by Appellees in support of the motion for summary judgment. Joyner's affidavit contained statements that she, as franchisee owner, was not aware of any other vehicular accidents involving customers exiting the Third Egress Point. Expert's affidavit and report, discussed in detail below, contained statements on the physical aspects of the driveway and its relation to the standards by which driveways are permitted to connect to public ways. Appellants submitted no affidavits or any contrary proof.

Upon oral arguments, the pleadings, and the affidavits, the trial court found that

---

[1]Hunter is not and never was a party to this appeal or the underlying case.

[2]The negligence per se claim asserted that the Third Egress Point did not conform to state standards for driveway connections. This claim was dropped after evidence came to light that the driveway conformed to the relevant standards.

the driveway conformed to all relevant standards, that the accident involving a third-party vehicle attempting to exit the property was not foreseeable, and that no unreasonably dangerous condition existed at the time of the accident. Additionally, the trial court held that Appellees owed no duty to Appellants as a matter of law and that Appellees negated an essential element of the claim. The court further noted that the proximate cause of the accident was Hunter's failure to yield the right-of-way as opposed to any condition or lack of traffic control on the property. Appellants filed a timely appeal.

## II. ISSUES

We consolidate and restate Appellants' issues for review as follows:

A.      Whether the trial court erred in holding that Appellees did not owe a duty of care to Appellants;

B.      Whether the trial court erred in holding that the injuries sustained by Appellants were proximately caused by a non-party's failure to yield the right-of-way and not the lack of traffic control measures on the property; and

C.      Whether the trial court erred in granting Appellees' motion for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The standard of review following a trial court's decision on a motion for summary judgment is *de novo* with no presumption of correctness. *Tantham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015) (citing *Parker v. Holiday Hospitality Franchising, Inc.*, 446 S.W.3d 341, 346 (Tenn. 2014)). We must make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). When reviewing the evidence, we must determine whether any factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015); *Byrd*, 847 S.W.2d at 211. The moving party who does

not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. If the moving party satisfies the burden of production, the nonmoving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

In evaluating the evidence in the summary judgment context, we must view the evidence in the light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party. *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 202, 373-74 (Tenn. 2007); *Abbott v. Blount Cnty.*, 207 S.W.3d 732, 735 (Tenn. 2006).

## IV. DISCUSSION

To prevail on a negligence claim, a plaintiff must establish the following elements:

(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

*Biscan v. Brown*, 160 S.W.3d 462, 478-79 (Tenn. 2005) (citing *Coln v. City of Savannah*, 266 S.W.2d 34, 39 (Tenn. 1998)); *See also Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). Essentially, Appellants assign error to the trial court's decision that Appellees owed no duty of care toward Appellants and that the proximate cause of Appellants' injuries was a non-party's failure to yield the right of way contrary to his statutory duty.

We turn first to the duty element, for without the establishment of a duty, there can be no negligence. *Estes v. Peels*, No. E1999-00582-COA-R3-CV, 2000 WL 1424808, *3, 2000 Tenn. App. LEXIS 641, *9 (unpublished) (Tenn. Ct. App. Sept. 21, 2000) (citing *Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992)). Whether a defendant owes a duty to the plaintiff is a question for the court. *Id.* (citing *Carson v. Headrick*, 900 S.W.2d 685, 690 (Tenn. 1995)).

In *Estes,* we summarized the duty element as follows:

"Duty" has been defined as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). In determining whether a duty exists, we must consider whether "such a relation exists between the parties that the

community will impose a legal obligation upon one for the benefit of others—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869–70 (Tenn.1993) (quoting *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 858–59 (Tenn.1985)). A duty to act with due care arises when a risk is unreasonable, that is, "if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall*, 913 S.W.2d at 153. The Supreme Court has set forth several factors to be considered in determining whether a risk is unreasonable, including

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct. *Id.*

*Estes*, 2000 WL 1424808, at \*3. We continued: "After consideration of these factors, we must then balance 'the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm.' *Coln v. City of Savannah*, 966 S.W.2d at 39; *see also Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *Rice*, 979 S.W.2d at 308; *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 902 (Tenn. 1996); *McCall*, 913 S.W.2d at 153." *Id.*

In addition to the elements of negligence, a plaintiff seeking to prevail against a property owner on a premises liability claim must prove either that:

> (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident.

*Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d at 350 (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). Further, "a plaintiff is required to prove that the injury was a reasonably foreseeable probability and that some action within the defendant's power more probably than not would have prevented the injury." *Dobson v. State*, 23 S.W.3d 324, 331 (Tenn. Ct. App. 1999)).

In Tennessee, a property owner or occupier may owe a duty to persons on a public

thoroughfare adjacent to the premises if some condition on the property creates a foreseeable risk of harm. *See, e.g., De Ark v. Nashville Stone Setting Corp.*, 279 S.W.2d 518, 521 (Tenn. Ct. App. 1955) ("the public right of passage in a road, street, or sidewalk, carries with it the obligation upon occupiers of abutting land to use reasonable care not to endanger such passage, by excavations or other hazards so close to the public way as to make it unsafe to persons using it with ordinary care"); *see also Helton v. Glenn Enterprises, Inc.*, 209 S.W.3d 619, 627 (Tenn. Ct. App. 2006) (holding that a motel had a duty to prevent reasonably foreseeable thefts of automobiles in an adjacent parking lot that the motel led patrons to believe was on motel property). However, the property owner is not responsible for removing or warning against "conditions from which no unreasonable risk was to be anticipated." *Parker*, 446 S.W.3d at 350.

In *Estes,* we held that the owner of a manufacturing plant owed no duty to a passing motorist who was struck by a vehicle exiting the parking lot because "it was not foreseeable to [property owner] that a person would attempt to exit the plant without yielding to oncoming traffic." *Id.,* 2000 WL 1424808, at *6. Additionally, even if this conduct were foreseeable, we noted that "imposing a duty on [property owner] to prevent a driver from pulling out on a highway without yielding to oncoming traffic would be an onerous burden." *Id.* at *7. Furthermore, we recognized that "[t]he responsibility for the placement and maintenance of traffic controls on the public way rests with the government, not a private entity . . . ." *Id.* (citing *Gorman v. Earhart*, 876 S.W.2d 832, 836 (Tenn. 1994) (holding Manual on Uniform Traffic Control devices applies only to public authorities and those entities with a contractual relationship with public authorities for the construction, operation, or maintenance of public roads and highways)); *see also* Tenn. Code Ann. § 55-8-113 (1998) (prohibiting the display of any unauthorized sign or device on a highway attempting to direct traffic).

In the case at bar, Appellants argue that the existence of the Third Egress Point is an unreasonable risk "because the foreseeable probability and gravity of harm outweighs the burden upon Appellees to engage in alternative conduct that would have prevented or lessened the likelihood of the harm." Appellants further contend that the Third Egress Point "promotes the uncontrolled flow of vehicular traffic into a five-lane undivided highway . . . ." In response, Appellees argue that there is no condition on the property triggering a liability under the premises liability theory and submit an affidavit and report of Expert regarding his comprehensive review of the accident scene, applicable documentation, and legal authority as to the construction of driveways and entrances to highways. This affidavit provides a comparison of both Tennessee Department of Transportation's Manual for Constructing Driveway Entrances on State Highways, 2015 Edition ("TDOT Manual") and the Manual on Uniform Traffic Control Devices ("MUTCD") published by the Federal Highway Administration of the United States Department of Transportation.

Expert's affidavit included the following conclusions in regards to the TDOT

Manual:

1. The edge clearance for the subject driveway access is approximately 29.6 feet, which exceeds the requirement of 20 feet;

2. The driveway angle for the subject driveway is 90 degrees, which is the required angle;

3. The width of the subject driveway is approximately 19 feet at its widest point, which is within the required range of 12 to 24 feet;

4. The corner clearance for the subject driveway to Pioneer Village Road is 136.6 feet, which exceeds the requirement of 100 feet for this type of application; and

5. The available sight distance for vehicles entering U.S. Highway 421 at the subject driveway exceeds 1,000 feet looking north and 1.400 feet looking south, which exceeds the required sight distance of 625 feet for 50 miles per hour design speed.

In regard to the MUTCD, Expert's affidavit included the following conclusions:

1. The MUTCD states that "parking areas, including the driving aisles within those parking areas, that are either publicly or privately owned shall not be considered to be 'open to public travel' for purposes of MUTCD applicability;"

2. The driveway entrances from other businesses along the section of U.S. Highway 421/State Route 34 where the subject property is located do not have signage or other traffic control devices for controlling right-of-way access or traffic guidance;

3. Design practices for driveway exits/entrances to roadways do not typically include traffic control devices such as stop signs, yield signs, etc. As outlined in the Tennessee Comprehensive Driver License Manual, drivers entering the roadway from a driveway are required to yield the right-of-way to traffic already on the roadway; and

4. The subject driveway entrance is not required to have traffic control devices.

Appellants further contend that the Third Egress Point is a "known dangerous and hazardous intersection" and has a history involving motor vehicle accidents. However,

Appellants do not offer nor is there any evidence in the record for this proposition. In contrast, Appellees submitted an affidavit from Joyner stating that she was not aware of any other accident involving a vehicle pulling out from the driveway either before or since the accident involving Appellants. Accordingly, the trial court found the following:

> The Defendants have produced uncontroverted expert proof from Alan Parham, P.E. that the driveway and third point of egress on the property were constructed in accordance with TDOT requirements and meet or exceed the specifications for driveway access outlined in [TDOT Manual] promulgated by TDOT. Per the manual and applicable TDOT regulations, the driveway is not required to have traffic control devices.

Furthermore, the court concluded that:

> The Defendants have negated an essential element of the Plaintiffs' claim in that the accident of September 4, 2016 involving a third-party vehicle attempting to exit the property was not foreseeable, and, accordingly, the Defendants owed no duty to the Plaintiffs as a matter of law. The proximate cause of the accident, moreover, was [the non-party's] failure to yield the right of way to the Plaintiffs as opposed to any condition or lack of traffic control on the property. Finally, the driveway did not constitute an unreasonably dangerous condition at the time of the accident.

Accordingly, on review of the evidence, we agree with the trial court's decision to grant summary judgment. Appellees submitted uncontroverted expert proof that there was no unreasonably dangerous condition on Appellees' property at the time of the accident. There is no evidence in the record revealing any obstacle that blocked the view of the non-party. An accident involving a third-party exiting the property and failing to yield the right-of-way is unforeseeable. *See Estes*, 2000 WL 1424808, at *6. To hold otherwise would be an onerous burden on not only Appellee but every property owner. *See id.* at *7. Therefore, in accordance with the case law cited above[3], Appellees owed no duty to Appellants and successfully negated an essential element of Appellants' claim.

Because we affirm the trial court's decision that Appellees owed no duty of care toward Appellants, we need not address the proximate cause element. All other issues are pretermitted.

---

[3]Appellants argue that the trial court used the incorrect standard by substituting the TDOT standards to find that Appellees were not negligent in this case. This argument is without merit. Expert's affidavit, photographs, and other pleadings are merely proof submitted to negate an element of the negligence claim. Appellants had the opportunity to submit evidence to the contrary but failed to do so. The trial court, in its ruling, stated the correct standards of negligence and premises liability on which its holdings were based.

## IV. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court in its grant of summary judgment in favor of Appellees. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, Johnny A. Howell and Charity L. Councill.

_____
JOHN W. MCCLARTY, JUDGE